UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
ANDERSON A. MORAN,                              :

                     Plaintiff,     :

          -against-                          :          **REPORT AND RECOMMENDATION**

CAROLYN W. COLVIN, Commissioner      :          14-CV-9530 (ER)(KNF)
of the Social Security Administration of the
United States of America,                      :

              Defendant.     :
--------------------------------------------------------X
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

TO THE HONORABLE EDGARDO RAMOS, UNITED STATES DISTRICT JUDGE

## INTRODUCTION

     Anderson A. Moran ("Moran") commenced this action against the Commissioner of

Social Security ("Commissioner"), seeking review of an administrative law judge's ("ALJ")

decision, dated May 7, 2013, finding him ineligible for disability insurance benefits, pursuant to

Title II of the Social Security Act, 42 U.S.C. §§ 401-434. Before the Court are the parties'

respective motions for judgment on the pleadings, pursuant to Rule 12(c) of the Federal Rules of

Civil Procedure.

## ALJ'S DECISION

     Moran alleged disability beginning June 4, 2011. An administrative hearing was held, at

which Moran, represented by counsel, and a vocational expert testified. The issue before the

ALJ was whether Moran is disabled. The ALJ determined that Moran: (1) met the insured status

requirements of the Social Security Act through December 31, 2016; (2) has not engaged in

substantial gainful activity since June 4, 2011; (3) has the following severe impairments: right

shoulder impairment, neck impairment and asthma; (4) does not have an impairment or combination of impairments that meets or medically equals the severity of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, has the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b), is able to sit, stand and walk up to six hours each day, lift and carry up to five pounds occasionally with the right dominant hand, lift and carry up to 20 pounds occasionally and ten pounds frequently with the left hand, occasionally reach in all other directions with the right upper extremity, and occasionally finger and handle with the right hand, has no limitations with the left hand, should not perform overhead reaching, pushing or pulling with the right upper extremity, should avoid exposure to respiratory irritants and avoid working at unprotected heights and with hazardous machinery; (5) is unable to perform any past relevant work; (6) was born in 1969; and (7) has at least a high school education and is able to communicate in English.

The ALJ determined that Moran's statements concerning the intensity, persistence and limiting effects of his symptoms "are not entirely credible" because his: (a) daily activities are not supported by the medical record; and (b) significant limitations regarding his right shoulder do not prevent him from performing basic work activities. The ALJ gave "partial weight" to the opinion of consultative internist Dr. Shannon Gearhart ("Dr. Gearhart") who opined that Moran "should avoid activities requiring fine manipulation of the right hand," because she only examined Moran once, in June 2012, and Moran's primary care physician indicated no restriction on fine manipulation. The ALJ noted that the December 2012 treatment notes of Moran's treating physician Dr. Onuoha Uchechukwu indicate that his asthma symptoms have worsened, although he only used albuterol as a treatment two times in the preceding three weeks.

In January 2013, Moran's treating physician, Dr. Frances Cuomo ("Dr. Cuomo") completed a medical source statement, in which she indicated that Moran underwent right shoulder surgery, in August 2010, and has since experienced increased pain.  She opined that due to the severity of his shoulder condition, Moran has limited range of motion with continued pain in the neck and has no further surgical options.  The ALJ gave "partial weight" to Dr. Cuomo's opinion that Moran is unable to work because that determination is reserved for the Commissioner, but he stated that "great weight is given to his[1] opinion regarding specific limitations because he is a specialist and a treating source."  Moreover, the ALJ gave "substantial weight" to Dr. Cuomo's April 2013 functional capacity assessment regarding Moran's ability to sit, stand, walk, push, pull and reach as it pertains to his right shoulder.

The ALJ gave "[p]artial weight" to the opinion of an orthopedic consultant, Dr. Donald Goldman ("Dr. Goldman"), that Moran has a right shoulder restriction in range of motion, by approximately 40 percent, accompanied by atrophy, weakness, parenthesis and significant loss of function, making Moran unable to work at shoulder level or above, climb ladders or scaffolds, push or pull, lift, or drive a car and permanently disabled from any type of employment.  The ALJ explained the reasons for the weight he accorded the opinion are that Dr. Goldman "is not a treating physician and the determination of disability is reserved to the Commissioner."

The ALJ found that transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that Moran is not disabled regardless of transferable job skills.  However, he concluded that vocational expert testimony was necessary to determine the extent to which Moran's limitations

---

[1] The ALJ assumed, erroneously, that Dr. Cuomo is a man.

impeded his ability to perform all or substantially all the requirements of the full range of light

work. The vocational expert testified that an individual with Moran's limitations would be able

to perform the requirements of representative occupations, such as usher, marker and routing

clerk, even if that person could not perform any lifting or carrying with the right upper

extremity. The ALJ concluded that, considering Moran's age, education, work experience and

residual functional capacity, jobs exist in significant numbers in the national economy that he

can perform. The ALJ found Moran not disabled.

## PLAINTIFF'S CONTENTIONS

Moran contends that Dr. Cuomo opined that he "was limited in his use of his right hand

for handling/gross manipulation due to moderate pain, limited motion, and weakness in his right

arm," he was limited in reaching in all directions as well as unable to push or pull and he could

lift less than ten pounds. Moran contends that the ALJ rejected Dr. Cuomo's opinion improperly

because her opinion is well-supported and not contradicted by the record medical evidence. Dr.

Cuomo was Moran's orthopedic surgeon, who directed him to have physical therapy, cortisone

injections and pain management. Furthermore, Dr. Cuomo's opinion is consistent with Dr.

Gearhart's. According to Moran, the ALJ's finding that he retained the use of his dominant right

hand for occasional reaching and fingering is not supported by any medical evidence. The ALJ

mischaracterized Dr. Gearhart's finding regarding fine manipulation when the ALJ stated that

Dr. Gearhart found "some limits" in Moran's ability to perform fine manipulation with his right

hand, whereas Dr. Gearhart actually advised that Moran needed to avoid that type of activity.

Moran asserts that the ALJ rejected improperly his complaints of pain, including his

testimony that his pain medication caused him severe drowsiness. Although the ALJ

acknowledged Moran's testimony that he needed to nap for one hour each day, the ALJ did not

acknowledge that Moran was prescribed narcotic pain medication, stating that "there is no medical reason to support" Moran's need to take naps.  However, in light of Moran's testimony and the regulations requiring the ALJ to consider Moran's medications and their side effects, it was an error for the ALJ to find that Mr. Moran had no basis for his complaints of daytime drowsiness.

Moran contends that the vocational expert's testimony should be rejected as unreliable because, under the Selected Characteristics of Occupations ("SCO"), the job of a routing clerk requires frequent, not occasional, reaching, handling and fingering.  Similarly, the job of a marker requires constant, not occasional, reaching and handling.  According to Moran, in light of the vocational expert's errors in identifying the marker and routing clerk jobs, the remainder of the vocational expert's testimony should be rejected as unreliable.  Moran contends that no substantial evidence supports the ALJ's findings at step five of the Social Security Administration's five-step evaluative process.  Moran requests remand for additional administrative proceedings.

## DEFENDANT'S CONTENTIONS

The defendant contends that, in making the residual functional capacity determination, the ALJ relied on the plaintiff's testimony and Dr. Cuomo's reports, and his findings are supported by substantial evidence.  The plaintiff testified that he was able to attend to his personal hygiene and estimated that he could carry or lift about five pounds with his right hand, for example, he can carry a gallon of milk for about 30 seconds.  This testimony supports the ALJ's finding that the plaintiff could use his right hand for fine manipulation, but only occasionally for gross manipulation, and he could lift or carry approximately five pounds with his right hand, occasionally.  The defendant asserts that the ALJ's residual functional capacity

assessment is supported by Dr. Cuomo's reports, in which she restricted her evaluation to the plaintiff's shoulder, as that was all that she treated. Dr. Cuomo indicated that the plaintiff is limited in reaching in all directions and handling, but he was not limited with respect to fingering. According to the defendant, Dr. Gearhart's report that the plaintiff should avoid activities requiring fine manipulation of his right hand is inconsistent with Dr. Gearhart's own findings on examination that the plaintiff's hand and dexterity were intact in both hands and his right-hand strength was 4/5. Moreover, the ALJ adopted some of Dr. Goldman's findings that support the ALJ's residual functional assessment. The defendant contends that the weight accorded to medical opinions by the ALJ is permissible, and the ALJ essentially adopted Dr. Cuomo's opinion. The ALJ's findings are also consistent with the record as a whole. Furthermore, the ALJ did not ignore the plaintiff's complaints of pain, and no medical evidence shows that the plaintiff experienced drowsiness or other symptoms from medication on a regular basis. The defendant asserts that, in light of the absence of any evidence on the side effects of drowsiness and the absence of medical evidence on the plaintiff's need to nap, the ALJ's findings must be upheld.

The defendant contends that the ALJ relied reasonably on the vocational expert's testimony because, "when an ALJ is presented with an apparent conflict between a job as described by a vocational expert and as described by the DOT [Dictionary of Occupational Titles] (or SCO), the ALJ may reasonably rely on the [vocational expert's] testimony where it is more specific," which was the case here. According to the defendant, the plaintiff assumes that the requirements listed for the jobs of routing clerk and marker necessarily apply to both hands, which is not the case. The vocational expert testified that those jobs could be performed by a person who could not lift or carry any weight with his dominant hand. Even if the ALJ erred in

relying on the vocational expert's description of the routing clerk and marker jobs, the ALJ's decision should be affirmed because the position of an usher requires only occasional reaching, handling and fingering, and no binding authority supports the plaintiff's argument that remand is required in this circumstance since no unresolved conflict exists between the vocational expert's testimony and the DOT.

### PLAINTIFF'S REPLY

Moran contends that Dr. Gearhart's opinion is consistent with Dr. Cuomo's. Moreover, Moran's testimony does not support the ALJ's residual functional capacity findings because he testified that getting dressed caused him the worst pain and it felt as if he was being stabbed with a knife. Concerning the use of his hands, Moran testified that he is "okay" if he does not have to lift anything or move his right hand too much; in sum, he testified that his right hand is okay, so long as he does not have to use it, which does not support the conclusion that he could use his dominant hand for as much as a third of an eight-hour workday. Moreover, that Moran can carry a gallon of milk for 30 seconds does not support the finding that he was able to use his right hand throughout the day, since he did not testify that he could perform repeatedly this activity throughout the day. The ALJ discounted Moran's subjective complaints as unsupported by medical record, disregarding the fact that Moran's physicians prescribed narcotic pain medication. Moran asserts that the record establishes that he used prescribed narcotic pain medication, requiring him to nap one hour a day as an averse side effect, which is indicated as such in the medication manufacturer's warning. According to Moran, the defendant's argument that the vocational expert's testimony was consistent with the DOT is meritless because the vocational expert never identified the conflict between her testimony and the job requirements set forth in the DOT and SCO, which establishes that an individual would need to perform

7

frequent and constant reaching for the routing clerk and marker jobs.  In light of the vocational

expert's failure to identify a conflict and the evidence demonstrating that Moran's residual

functional capacity for reaching and handling would not permit occasional reaching and

handling with his dominant hand, the remaining job of an usher is not an adequate basis upon

which to deny his claim.

## LEGAL STANDARD

   "After the pleadings are closed—but early enough not to delay trial—a party may move

for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  "The court shall have power to enter,

upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing

the decision of the Commissioner of Social Security, with or without remanding the cause for a

rehearing."  42 U.S.C. §405(g).

> A district court may set aside the Commissioner's determination that a claimant is
> not disabled only if the factual findings are not supported by "substantial evidence"
> or if the decision is based on legal error.  Substantial evidence "means such relevant
> evidence as a reasonable mind might accept as adequate to support a conclusion."

> Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (citations omitted).

"Failure to apply the correct legal standard constitutes reversible error, including, in certain

circumstances, failure to adhere to the applicable regulations."  Kohler v. Astrue, 546 F.3d 260,

265 (2d Cir. 2008) (internal citations omitted).

   To qualify for disability benefits, an individual must be unable "to engage in any

substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to

last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Social

Security Administration's regulations establish a five-step process for determining a disability

claim. See 20 C.F.R. § 404.1520(a)(4).

> If at any step a finding of disability or nondisability can be made, the [Social
> Security Administration] will not review the claim further.  At the first step, the
> agency will find nondisability unless the claimant shows that he is not working at a
> "substantial gainful activity."  At step two, the [Social Security Administration] will
> find nondisability unless the claimant shows that he has a "severe impairment,"
> defined as "any impairment or combination of impairments which significantly
> limits [the claimant's] physical or mental ability to do basic work activities."  At step
> three, the agency determines whether the impairment which enabled the claimant to
> survive step two is on the list of impairments presumed severe enough to render one
> disabled; if so, the claimant qualifies.  If the claimant's impairment is not on the list,
> the inquiry proceeds to step four, at which the [Social Security Administration]
> assesses whether the claimant can do his previous work; unless he shows that he
> cannot, he is determined not to be disabled.  If the claimant survives the fourth stage,
> the fifth, and final, step requires the [Social Security Administration] to consider so-
> called "vocational factors" (the claimant's age, education, and past work experience),
> and to determine whether the claimant is capable of performing other jobs existing
> in significant numbers in the national economy.

> Barnhart v. Thomas, 540 U.S. 20, 24-25, 124 S. Ct. 376, 379-80 (2003) ( internal
> citations omitted).

"[T]he opinion of a claimant's treating physician as to the nature and severity of the

impairment is given 'controlling weight' so long as it 'is well-supported by medically acceptable

clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial

evidence in [the] case record." Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008) (citations

omitted).  "Although the claimant bears the general burden of proving that he is disabled under

the statute, 'if the claimant shows that his impairment renders him unable to perform his past

work, the burden then shifts to the [Commissioner] to show there is other gainful work in the

national economy which the claimant could perform.'" Draegert v. Barnhart, 311 F.3d 468, 472

(2d Cir. 2002) (quoting Carroll v. Sec'y of Health & Human Servs., 705 F.2d 638, 642 (2d Cir.

1983)).

## APPLICATION OF LEGAL STANDARD

Treating Physician's Opinion

Although Moran contends that "the ALJ improperly rejected Dr. Cuomo's opinion," he does not identify what opinion or what part of Dr. Cuomo's opinion the ALJ rejected. The Court finds that the ALJ did not reject Dr. Cuomo's January 2013 and April 2013 opinions. The ALJ rejected properly Dr. Cuomo's opinion regarding Moran's ability to work, because that is not a medical opinion but an opinion on the issue reserved to the Commissioner. See 20 C.F.R. § 404.1527(d). The ALJ gave great weight to Dr. Cuomo's January 2013 opinion and substantial weight to Dr. Cuomo's April 2013 report, adopting Dr. Cuomo's reported limitations, except with respect to fingering. Dr. Cuomo reported, in April 2013, that Moran was limited in reaching and handling and was not limited in his ability to use his right arm for fine manipulation. In the narrative portion of the April 2013 report, Dr. Cuomo noted solely that Moran has moderate pain and limited motion and weakness in his right arm. In the January 2013 opinion, Dr. Cuomo stated that Moran had lost 50% of the use of his arm, and she did not opine that he was prevented from occasional reaching or fingering with his right arm and hand. The ALJ did not adopt Dr. Cuomo's finding that Moran was not limited in fingering because Dr. Gearhart found "some limits" in fingering. Moran contends that the ALJ mischaracterized Dr. Gearhart's finding regarding fine manipulation because Dr. Gearhart advised that Moran needed to avoid this activity, not that he had "some limits" in fine manipulation. However, the ALJ did not mischaracterize Dr. Gearhart's finding because the ALJ stated, explicitly, that Dr. Gearhart opined that Moran "should avoid activities requiring fine manipulation of the right hand." The ALJ gave only partial weight to Dr. Gearhart's opinion and explained the reason for that weight, namely, that Dr. Gearhart examined Moran only once and Dr. Cuomo indicated no restriction on

10

fine manipulation.  Since Dr. Gearhart's own findings on Moran's examination indicated that Moran's hand and finger dexterity were intact and his grip strength was 4/5 on the right, the ALJ declined, properly, to adopt  Dr. Gearhart's opinion that Moran should avoid activities requiring fine manipulation of his right hand as well as Dr. Cuomo's opinion that Moran had no restriction on fine manipulation.  Instead, the ALJ adopted Dr. Gearhart's findings on fine motor activity of the hands, rather than Dr. Gearhart's conclusion that Moran should avoid activities requiring fine manipulation of his right hand, which was inconsistent with those findings.  Thus, the ALJ's use of the language "some limits" concerning Moran's fingering was not a mischaracterization.  The Court finds that the ALJ gave proper weight to Dr. Cuomo's opinion, explained properly the weight given to Dr. Cuomo's opinion and the reasons for the weight given.  Thus, the ALJ committed no error of law and his findings are supported by substantial evidence.

> Plaintiff's Subjective Complaints of Pain

Moran contends that "the ALJ improperly rejected [his] subjective complaints of pain," namely, his testimony about the symptoms caused by his pain medication, including severe drowsiness.  However, the ALJ considered Moran's testimony about the symptoms of his pain medication because: (a) Moran testified that when he takes painkillers he becomes drowsy and goes to bed for a few hours; and (b) the ALJ concluded that no medical record supported Moran's allegation that he required a nap every day.  The ALJ found properly that Moran's allegations concerning the intensity, persistence and limiting effects of his symptoms were not credible because they were not consistent with the medical record.  In considering Moran's complaints of pain, the ALJ must take into account only symptom-related functional limitations and restrictions "which can reasonably be accepted as consistent with the objective medical evidence and other evidence."  20 C.F.R. § 404.1529(c)(3).  As no medical evidence in the

11

record exists noting any side effects of the pain medication Moran was taking, the ALJ considered and rejected, properly, Moran's statements concerning the intensity, persistence and limiting effects of his symptoms related to pain medication.  Thus, the ALJ committed no error of law and his findings are supported by substantial evidence.

Reliability of the Vocational Expert's Testimony

Moran contends that his residual functional capacity for occasional reaching and handling would not permit him to fulfill the requirements of the two jobs identified by the vocational expert, a marker and a routing clerk, because a marker's position requires constant reaching and handling, not occasional, and a routing clerk's position requires frequent reaching and handling, not occasional.  Although Moran concedes that his residual functional capacity for occasional reaching and handling would permit performance of the requirements of the third job identified by the vocational expert, an usher, because that job requires occasional reaching and handling, he urges the court to reject that part of the vocational expert's testimony as unreliable and to find it an inadequate basis upon which to sustain the ALJ's burden at step five.  However, Moran fails to make citation to any binding authority in support of this argument or that remand is warranted under the circumstances of this case and in light of his concession that his residual functional capacity for occasional reaching and handling would satisfy the requirements of the usher's job identified by the vocational expert, which exists in significant numbers in the national economy.  In the absence of binding authority to support Moran's argument, the Court finds that the ALJ: (a) satisfied his burden at step five of the sequential analysis; and (b) committed no error of law.  The Court finds further that substantial evidence exists supporting the ALJ's findings.

## RECOMMENDATION

For the foregoing reasons, I recommend that the plaintiff's motion, Docket Entry No. 17, be denied and the defendant's motion, Docket Entry No. 25, be granted.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Edgardo Ramos, 40 Centre Street, Room 410, New York, New York, 10007, and to the chambers of the undersigned, 40 Centre Street, Room 425, New York, New York, 10007. Any requests for an extension of time for filing objections must be directed to Judge Ramos. *Failure to file objections within fourteen (14) days will result in a waiver of objections and will preclude appellate review.* See Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985); Cephas v. Nash, 328 F.3d 98, 107 (2d Cir. 2003).

Dated: New York, New York
December 21, 2015

Respectfully submitted,

*Kevin Nathaniel Fox*
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

13